Bonnie L. DISIDORE, Guardian
and Conservator of Karen
S. Disidore, Plaintiff,

v.

MAIL CONTRACTORS OF AMERICA,
INC., Defendant.

No. CIV.A. 99–2486–GTV.

United States District Court,
D. Kansas.

Aug. 18, 2000.

Victor A. Bergman, Stephen N. Six, Shamberg, Johnson & Bergman,m Overland Park, KS, for plaintiff.

James C. Morrow, Kurt D. Maahs, Morrow, Willnauer & Klosterman, L.L.C., Kansas City, MO, for Mail Contractors of America, Inc.

Bradley M. Dowd, Sherman, Taff & Bangert, P.C. Kansas City, MO, Robert A. Horn, Horn, Aylward & Bandy LLC, Kansas City, MO, for Unitran Inc. and Hoovestol Inc.

Darrell L. Warta, Foulston & Siefkin L.L.P., Wichita, KS, for Holland Hitch Company.

Janice M. Karlin, Office of United States Attorney, Kansas City, KS, for United States of America.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

This matter is before the Court on Plaintiff's Motion to Compel Disclosure and Discovery (doc. 68). The Parties indicated at the July 13, 2000 telephone status conference that Part I of the Motion, which deals with Plaintiff's First Interrogatories No. 7 and 8 and Plaintiff's Fourth Interrogatories, is moot. The Parties also indicated that Part II is moot except for the issues involving Plaintiff's Request for Production Nos. 15 and 16 and Privilege Log Items 2, 21 and 23. The Court therefore denied those portions of the Motion to Compel as moot. The Court will now proceed to rule on the remaining issues.

### I. Background Information

This action arises out of a motor vehicle accident that occurred on February 9, 1999. Plaintiff was driving behind a tractor-double trailer driven by an employee of Defendant, when the rear trailer become disengaged

from the tractor trailer unit. The rear trailer collided with Plaintiff's automobile, resulting in injuries to Plaintiff.

The tractor trailer unit consisted of a power unit (tractor) and two trailers connected by a convertor dolly and fifth wheel assembly. Plaintiff is suing Defendant Mail Contractors of America, Inc., who had leased the trailers and convertor dolly/fifth wheel assembly from another entity. Complaint, ¶ 17. Plaintiff's Complaint alleges that "[t]railer # 2 was intended to be attached to trailer # 1 by sliding the king pin from trailer # 2 into a locking mechanism of the fifth wheel mounted on trailer # 1, causing the locking mechanism to close automatically and retracting the release handle to the closed position." *Id.*, ¶ 16. Plaintiff contends that trailer # 2 separated because the locking mechanism of the fifth wheel was in the open position. *Id.*, ¶ 23. She states in her Motion to Compel that she plans to rely upon the inspections and testimony of various members of the Kansas Highway Patrol and the designer/manufacturer of the fifth wheel assembly, all of whom have determined "that the mechanism was operating properly, and that the trailer separation occurred because of Defendant's failure to conduct the required pretrip inspection, which would have detected that the king pin of the trailer was not locked into the jaws of the fifth wheel." Sug. in Sup. of Motion to Compel (doc. 69) at 3.

Following the accident, the convertor dolly and fifth wheel were inspected at the scene by numerous individuals, including Bill Jones, an employee of Defendant, and Charles Shofner, an engineer who Defendant has identified as a non-testifying consulting expert. Issues involving both Jones and Shofner are the subject of Plaintiff's Motion to Compel.

## II. Plaintiff's Request for Production Nos. 15 and 16 and Privilege Log Items 2, 21, and 23

### A. The Discovery at Issue

Plaintiff's Request No. 15 seeks "[a]ll written reports or other records made by Allen Bridges, Billy Roberts or Bill Jones pertaining to the accident of February 9, 1999." Plaintiff's Request No. 16 seeks "[a]ll notes of conversations of interviews with Bill Jones regarding the events of February 9, 1999." Defendant objected to each request on the ground that each "seeks information protected by the attorney-work product doctrine and attorney-client privilege."[1] It submitted a Privilege Log identifying various documents that it alleged were privileged and/or protected by the work product doctrine.

Plaintiff claims that documents numbered 2, 21, and 23 from the Privilege Log should have been produced because they do not qualify as protected work product. Even if they do qualify as work product, Plaintiff contends that she has substantial need for the documents and is unable to obtain the substantial equivalent of the materials by other means. The Privilege Log identifies the three documents as follows:

**No. 2** "Memo of telephone conference with Bill Jones containing privileged information regarding accident investigation and further inspection of convertor." [These were undated notes made by James Higgins of the telephone conference he had with Jones on February 11, 1999. Higgins and Jones were employees of Defendant.]

**No. 21** "Notes of telephone conference with Bill Jones containing privileged information regarding investigation of trailer and convertor gear."

[These were also notes made by James Higgins of another telephone conference he had with Jones on February 11, 1999. The notes were dated that same day.]

**No. 23** "Notes of telephone conference with David Dinwiddie, James Higgins and Francene Pierce containing privileged information regarding accident investigation." [These were notes made by Marlena Eden, Defendant's office manager, of a February 11, 1999 telephone conference with the iden-

---

1. Defendant has apparently abandoned any claim that these documents are privileged attorney-client communications or protected *attorney* work product. Defendant asserts in its response to the Motion to Compel that they are ordinary or fact work product.

tified individuals. The notes were dated that same day.]

### B. Request No. 15

The Court does not find that any of the three documents listed in Defendant's Privilege Log are even responsive to this request. The requests seeks only those "written reports or other records *made by* ... Bill Jones pertaining to the accident." (Emphasis added.) The claimed protected documents are either notes *made by* James Higgins or Marlena Eden. The Motion to Compel is therefore denied with respect to Request No. 15.

### C. Request No. 16

Request No. 16 requests "[a]ll notes of all conversations or interviews with Bill Jones regarding the events of February 9, 1999." The Court finds that the three documents at issue are responsive to Request No. 16. The Court will thus proceed to determine whether they are protected by the work product doctrine, as Defendant asserts.

### 1. Standards for determining work product protection

■■■ As the party asserting work product protection, Defendant has the burden of establishing that the work product doctrine applies. *See McCoo v. Denny's, Inc.,* 192 F.R.D. 675, 683 (D.Kan.2000); *Boyer v. Board of County Comm'rs,* 162 F.R.D. 687, 688 (D.Kan.1995). To carry that burden, Defendant must make a "clear showing" that the asserted objection applies. *See McCoo,* 192 F.R.D. at 683; *Ali v. Douglas Cable Communications, Ltd. Partnership,* 890 F.Supp. 993, 994 (D.Kan.1995). A "blanket claim" as to the applicability of the work product doctrine does not satisfy the burden of proof. *McCoo,* 192 F.R.D. at 680. It is well settled that the party seeking to invoke work product immunity has the burden to establish *all elements* of the immunity and that this burden can be met only by an evidentiary showing based on competent evidence. *Id.* "That burden cannot be discharged by mere conclusory or ipse dixit assertions." *Id.* (quotations and citations omitted). A party's failure to meet this burden when the trial court is asked to rule upon the existence of the work product immunity is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made. *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984); *McCoo,* 192 F.R.D. at 680.

■ To establish work product protection, Defendant must establish that "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party." *Johnson v. Gmeinder,* 191 F.R.D. 638, 643 (D.Kan.2000) (citations omitted). Defendant has clearly established elements one and three—the items sought to be protected are documents and they were prepared by employees of Defendant. The second element is in dispute: were the documents prepared in anticipation of litigation?

This second element was extensively analyzed by Magistrate Judge Rushfelt in *Marten v. Yellow Freight System, Inc.,* No. 96-2013-GTV, 1998 WL 13244 (D.Kan. Jan.6, 1998). The Court stated:

The work product standard has two components. The first is what may be called the "causation" requirement. This is the basic requirement of the Rule that the document in question be produced because of the anticipation of litigation, i.e., to prepare for litigation or for trial. The second component is what may be termed a "reasonableness" limit on a party's anticipation of litigation. Because litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the Rule to require a higher level of anticipation in order to give a reasonable scope to the immunity.

■■■ The court looks to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product. Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine. The inchoate possibility, or even likely chance of litigation, does not give rise to work product. To justify

work product protection, the threat of litigation must be "real and imminent." To determine the applicability of the work product doctrine, the court generally needs more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation.

*Id.*, at *10 (citations and quotations omitted).

## 2. Are the documents protected work product?

■ In support of its work product assertion, Defendant submits the affidavit of its counsel, Kurt Maahs. The affidavit states that a representative of Kemper Insurance Companies contacted Maahs on February 11, 2000 (two days after the accident), "to retain him as counsel in this matter and to seek his opinions regarding the investigation of this claim." Maahs Aff., Ex. A to Resp. to Plaintiff's Motion to Compel (doc. 77). The affidavit states that, during that conversation, Maahs and the insurance company representative "discussed a course of action for the investigation of this claim, including retaining Dressler Engineers to inspect the equipment involved in this accident, as well as take photographs of the equipment." *Id.* The affidavit further states that on February 12, 2000, Maahs attended a meeting with Defendant's employees regarding this accident. *Id.*

The affidavit states nothing further that is even remotely related to the telephone conversations and notes at issue. It states nothing about whether litigation was anticipated or whether Maahs directed Defendant's employees James Higgins, Marlena Eden, or Bill Jones to investigate the accident, interview individuals regarding the accident, or document any such investigation or interviews, in anticipation of a lawsuit being filed.

In its responsive brief, Defendant states that "numerous phone calls occurred" which resulted in the notes at issue here. Defendant further states that the phone calls were made "[i]n preparation of Mr. Maahs' meeting with various employees of the Defendant on February 12." Resp. to Plaintiff's Motion to Compel (doc. 77) at 6. There is no eviden-

tiary support for these assertions, however. Even if they were supported by evidence, the Court would not find that such assertions shed any light on whether the discussions took place and whether the resulting notes were made *in anticipation of a lawsuit being filed.*

In short, the Court finds that Defendant's assertion that the notes are work product is not supported by competent evidence and that Defendant has failed to make a "clear showing" that the documents are entitled to protection. The Court will therefore grant Plaintiff's Motion to Compel production of these documents in response to Request for Production No. 16.

## III. Plaintiff's First Interrogatory No. 13(E) and Privilege Log No. 16

### A. The Discovery at Issue and Summary of the Parties' Arguments

Plaintiff's First Interrogatory No. 13 asks Defendant to identify all persons who have inspected any of the equipment involved in the accident. Subsections (A) through (D) asks Defendant to provide the following information for each person identified: job title, employer, entity on whose behalf the inspection was made, date of the inspection, and the nature and substance of the inspection. Subsection (E) asks Defendant to describe and attach a copy of all documents related to the inspection. Defendant asserted a general objection that "[t]his Interrogatory seeks information protected by the work-product doctrine and attorney-client privilege." It reiterated that objection in response to Subsection (E). It did not identify any of the claimed privileged documents, but did direct Plaintiff to its Privilege Log. In further response to the interrogatory, Defendant identified Charles Shofner as an individual who had, on February 10, 1999 (Defendant later revised the answer to reflect the correct date of February 11), reviewed the convertor and fifth wheel and who had taken measurements and photographs of them. Defendant's Privilege Log identifies Item 16 as "Notes taken by Charles Shofner on inspection."

Plaintiff seeks to compel production of these notes. She also requests an order requiring Defendant to produce Shofner for his deposition. Defendant opposes Plaintiff's request that Defendant be ordered to produce Shofner for his deposition on the grounds that Shofner is a Rule 26(b)(4)(B) non-testifying expert and that Plaintiff has not shown the "exceptional circumstances" required by that rule to take his deposition. Defendant opposes Plaintiff's Motion to Compel production of the notes on the grounds that Shofner's notes "are subject to the attorney work product doctrine and Rule 26(b)(4)(B)." Response to Plaintiff's Motion to Compel (doc. 77) at 8. Defendant states that the notes "include more than just factual information. They include Mr. Shofner's opinions and conclusions." *Id.*

## B. Analysis

### 1. Is Plaintiff entitled to take Shofner's deposition?

Fed. R. Civ. P 26(b)(4)(B) prohibits a party from discovering "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial" unless that party makes a showing of exceptional circumstances. Plaintiff appears to be arguing that Rule 26(b)(4)(B) is not applicable here because (1) Shofner is a *fact* witness as to the condition of the fifth wheel, and (2) Plaintiff is only seeking *factual* information about the condition of the fifth wheel. At the same time, however, Plaintiff does not appear to challenge Shofner's status as a non-testifying expert under Rule 36(b)(4)(B) or that Shofner's observation of the fifth wheel took place while he was acting in his capacity as a Rule 26(b)(4)(B) expert.

The Court is not persuaded by Plaintiff's argument that she is entitled to depose Shofner merely because she is seeking factual information and not his expert opinion. Rule 26(b)(4)(B) expressly protects the "facts known" by the expert, in addition to his/her opinions. Shofner did not forfeit his protected status as a non-testifying expert merely because he learned "facts" in the course of

his inspection. *See Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,* 175 F.R.D. 34, 42 (S.D.N.Y.1997) (Rule 26(b)(4)(B) expert does not lose expert status just because it learns facts during its investigation); *Chiquita Int'l Ltd. v. M/V Bolero Reefer,* No. 93 Civ. 0167, 1994 WL 177785, at *1 (S.D.N.Y. May 6, 1994) (same). For purposes of Rule 26(b)(4)(B), "the relevant distinction is not between fact and opinion testimony but between those witnesses whose information was obtained in the normal course of business and those who were hired to make an evaluation in connection with expected litigation." *Bank Brussels Lambert* 175 F.R.D. at 43 (quoting *Chiquita Int'l,* 1994 WL 177785, at *1).

Because Plaintiff does not dispute that Shofner was hired to evaluate the equipment in connection with anticipated litigation or that he obtained his factual information in his capacity as a consulting expert, Rule 26(b)(4)(B) is applicable here. The Court must proceed to decide whether Plaintiff is entitled to take Shofner's deposition under the "exceptional circumstances" standard set forth therein.

Specifically, Rule 26(b)(4)(B) provides that a non-testifying expert's deposition may be taken only "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." The party seeking discovery from the expert "carries a heavy burden in demonstrating the existence of exceptional circumstances." *Ager v. Jane C. Stormont Hospital & Training School for Nurses,* 622 F.2d 496, 503 (10th Cir.1980). *Accord Queen's University of Kingston v. Kinedyne Corp.,* 161 F.R.D. 443, 447 (D.Kan.1995).

Here, Plaintiff argues that Shofner's deposition is necessary because the condition of the fifth wheel was altered when it was "degreased" by an employee of the Kansas Highway Patrol, Sgt. Robert McKinzie, and because Shofner and Sgt. McKinzie were the only two people "with any expertise [who] inspected the fifth wheel before the grease was removed." Sug. in Sup. of Motion to Compel (doc. 69) at 13. In addition, Shofner

was "the only *engineer* with expertise on the mechanical operation of the fifth wheel" who observed the fifth wheel before it was degreased. *Id.* at 14 (emphasis added).

According to Plaintiff, Sgt. McKinzie conducted the "official inspection ... for the Kansas Highway Patrol." *Id.* at 2. His inspection included "a cycling of the locking mechanism of the fifth wheel." *Id.* It is undisputed that Sgt. McKinzie inspected the fifth wheel and convertor dolly on February 12, 1999, three days after the collision. It is also undisputed that Sgt. McKinzie steam-cleaned the grease from the surface of the fifth wheel with a pressure washer after he inspected the fifth wheel. Neither Plaintiff nor Defendant explains the significance of the degreasing. Plaintiff merely states that the degreasing "changed the condition of the fifth wheel" and that since the degreasing, "all other inspections have been at a disadvantage." *Id.* at 13.

As noted above, Plaintiff argues that it should be allowed to take Shofner's deposition because he is the only individual with engineering expertise to have examined the fifth wheel before Sgt. McKinzie degreased it. In addition, she argues that she is entitled to depose Shofner because she does not know "anything about the details of Mr. Shofner's inspection." *Id.* Plaintiff claims that Shofner's inspection was unsupervised and out of the presence of any third person. *Id.* (This is a claim that Defendant disputes.)

Plaintiff does admit that at least five other individuals inspected the fifth wheel before it was degreased. Plaintiff indicates that two of those five individuals were Troopers John Stout and Andy Thomason of the Kansas Highway Patrol. Plaintiff admits they "inspected and manipulated the fifth wheel." *Id.* at 13–14. Plaintiff does not find their inspection sufficient, however, because, according to Plaintiff, it is not clear whether their inspection and manipulation took place before or after Shofner's inspection, and because "neither one was able to identify anything mechanically wrong with the fifth wheel." *Id.* at 14. Also, neither individual is an engineer.

The remaining three individuals who Plaintiff states inspected the fifth wheel before the degreasing were employees of Defendant: Bill Jones, Allen Bridges, and Billy Roberts. Plaintiff is not satisfied with their inspections because, like Trooper Stout and Thomason, they are not engineers. Also, Bridges and Roberts did only a "visual inspection." *Id.* at 13. Bill Jones is deceased, and his deposition was never taken. Plaintiff therefore has no information about his observations.

Defendant counters that Plaintiff has sufficient information about the condition of the fifth wheel prior to its degreasing and that Plaintiff has failed to establish the necessary "exceptional circumstances" to depose Shofner. Defendant notes that Plaintiff has designated Sgt. McKinzie as an expert in this case, and Plaintiff does not dispute this. Because McKinzie inspected the fifth wheel with the grease still on it, Defendant contends that Plaintiff already has in its possession an expert's facts and opinions on this subject matter.

Furthermore, Defendant notes that virtually all of the individuals who inspected the fifth wheel before it was degreased have been deposed, including the troopers with the Kansas Highway Patrol. Also, Plaintiff failed to mention in her briefs that yet another state trooper, Marion Peterson, inspected the fifth wheel before it was degreased. In addition, Defendant states that, during Trooper Thomason's inspection, Thomason took between eleven and fourteen photographs of the equipment before the degreasing and that those photographs have been provided to Plaintiff. Also, Plaintiff has been provided with copies of Trooper Stout's report of his inspection. Trooper Stout testified in his deposition that he measured and drew a diagram of the fifth wheel as he observed it. Stout dep. at 17–18. Those measurements and the diagram were included in the report provided the Parties. Defendant thus claims that Plaintiff has a substantial amount of information regarding the condition of the fifth wheel before it was degreased and that Plaintiff has not shown the necessary exceptional circumstances to depose Defendant's non-testifying expert.

Defendant also refutes Plaintiff's argument that she does not have any information regarding Shofner's inspection. Defendant disputes Plaintiff's assertion that Shofner's inspection was out of the presence of any third party and states that Master Trooper Swart of the Kansas Highway Patrol was present during Shofner's inspection. Neither Plaintiff nor Defendant indicates whether Swart was ever interviewed or deposed, but the Court presumes he would have been available to be interviewed and/or deposed. Defendant also states that Trooper Peterson's report indicates that Shofner met with Master Trooper Swart to inspect the convertor dolly and that Swart indicated Shofner took some measurements and pictures of the convertor dolly. More importantly, Defendant also states that it has provided Plaintiff with three sets of the photographs Shofner took during his inspection. Finally, Defendant points out that there is absolutely no evidence that Shofner altered the fifth wheel in any way or that Shofner did anything but inspect, test, measure, and photograph the equipment.

■ The Court agrees with Defendant that Plaintiff has failed to show exceptional circumstances justifying discovery of Defendant's non-testifying expert. As the court in *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,* 175 F.R.D. 34, 44 (S.D.N.Y.1997) observed, "[c]ourts and commentators have commonly identified two situations where the exceptional circumstances standards has been met." The first situation, which is the only circumstance arguably applicable here, occurs "where the object or condition observed by the non-testifying expert is no longer observable by an expert of the party seeking discovery." *Id.* at 44 (citing *Hartford Fire Ins. v. Pure Air On The Lake Ltd.,* 154 F.R.D. 202, 207 (N.D.Ind.1993); David S. Day, Expert Discovery in the Eighth Circuit, 122 F.R.D. 35, 39 (1988)). This situation typically occurs when an item has been destroyed or its physical condition has deteriorated after only one party's expert has had the opportunity to observe the item. *Bank Brussels Lambert,* 175 F.R.D. at 44; Charles A. Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice and Procedure 2d § 3032 at 453 (1994).

For example, exceptional circumstances were found in a cigarette product liability case where the plaintiff's expert destroyed lung tissue during testing, making it impossible for the defendant to conduct its own tests or to replicate the plaintiff's expert's results. *See Braun v. Lorillard, Inc.,* 84 F.3d 230, 236 (7th Cir.1996). Exceptional circumstances were also found in an action involving a mudslide where the defendant's expert had examined the site immediately after the mudslide. *See Delcastor, Inc. v. Vail Ass'n,* 108 F.R.D. 405, 409 (D.Colo.1985). By the time the opposing party's expert was able to conduct a site investigation, five days had elapsed and the site conditions had changed considerably due to changes in temperature and human activity in and around the site. Similarly, exceptional circumstances were found where an allegedly defective roof was replaced after a party's expert had examined the roof but before the opposing party's expert could examine it. *See MacDonald Sprague Roofing Co. v. USM Weather-Shield Sys. Co.,* 35 Fed.R.Serv.2d 1121, 1122 (D.Mass.1983). They were also found in a case involving a ruptured sewer pipe where the pipe was excavated and the plaintiff refused to allow the presence of defendant's expert, despite having experts of its own present. *See Sanford Constr. Co. v. Kaiser Aluminum & Chemical Sales, Inc.,* 45 F.R.D. 465, 466 (E.D.Ky.1968). After the excavation was completed, new pipe was installed and blacktop was placed over the area.

■ The Court finds these cases distinguishable from the instant case. Here, Sgt. McKinzie of the Kansas Highway Patrol inspected the fifth wheel before it was degreased. Although Sgt. McKinzie is not an engineer, Plaintiff nevertheless concedes that he is one of "two people with any expertise" (the other being Shofner) to have inspected the fifth wheel before the grease was removed. Sug. in Sup. of Motion to Compel (doc.69) at 13. Plaintiff does not explain why it is essential that an *engineer* examine the fifth wheel. In any event, Plaintiff has designated Sgt. McKinzie as an expert witness.

In addition, many others, including various state troopers, have inspected the fifth wheel before it was degreased, and they have been deposed or could have been deposed. Furthermore, Plaintiff has at least eleven photographs of the fifth wheel taken by Trooper Thomason and three sets of photographs taken by Shofner during his inspection, all of which were taken before the wheel was degreased. Thus, unlike the above-cited cases, where the parties were unable to obtain any factual information or opinions regarding the condition of the items at issue before they were inalterably changed, Plaintiff is this case has substantial factual information relating to the condition of the fifth wheel before it was degreased. This is in addition to any opinions that Sgt. McKinzie may have regarding the fifth wheel.

It thus appears that Plaintiff already has in her possession "facts or opinions on the same subject by other means." Fed.R.Civ.P. 26(b)(4)(B).

The above-cited cases are also distinguishable because in each of those cases it was self evident that the change in condition or alteration was significant enough that it made it impossible or impracticable for the moving party to obtain necessary information about the item at issue. Here, the alteration is the degreasing of the fifth wheel. Plaintiff, however, never explains why the degreasing is significant—she merely states that it "changed the condition of the fifth wheel" and that since then, all other inspections "have been at a disadvantage." Sug. in Sup. of Motion to Compel (doc.69) at 13. She does not explain how the degreasing changed the fifth wheel's condition or why the later inspections have been at a disadvantage. The Court is only left to speculate as to how the degreasing changed the fifth wheel and why it would affect an expert's opinions regarding the fifth wheel. Moreover, Plaintiff fails to explain why deposing Shofner about his inspection and testing is essential or why it would even be instructive.

The Court also finds one other reason why this case is distinguishable from two of the cases cited above, *Braun* and *Sanford Construction*. In those cases, the change in condition was a result of an adversary's activity. No such evidence exists in this case. It is undisputed that the degreasing of the fifth wheel was done by Sgt. McKinzie, an employee of the Kansas Highway Patrol.

Finally, the Court is unpersuaded by Plaintiff's argument that she needs to depose Shofner because his inspection was unsupervised. Trooper Peterson's report indicates that Master Trooper Swart met with Shofner when he inspected the convertor dolly and that Swart indicated Shofner took some measurements and pictures of the convertor dolly. There is absolutely no evidence that Shofner altered the fifth wheel in any way or that Shofner did anything inappropriate.

In light of the foregoing, the Court is unable to conclude that Plaintiff has met her "heavy burden" to show "exceptional circumstances" under which it is impracticable for her to obtain facts or opinions regarding the fifth wheel by other means. The Court will therefore deny Plaintiff's request to take the deposition of Charles Shofner.

**2. Is Plaintiff entitled to discover Shofner's notes?**

Rule 26(b)(4)(B) addresses only interrogatories and depositions. It states that "[a] party may, *through interrogatories or by deposition*, discover facts known or opinions held" by a non-testifying expert upon a showing of exceptional circumstances. Fed. R. Civ. P. 26(b)(4)(B) (emphasis added). Although the Rule does not specifically apply to the non-testifying expert's reports or notes, courts have applied the "exceptional circumstances" standard to those types of documents. *See, e.g., Braun v. Lorillard, Inc.,* 84 F.3d 230, 235–36 (7th Cir.1996) (applying standard to results of tests conducted by plaintiff's expert); *Hartford Fire Ins. v. Pure Air on the Lake Ltd.,* 154 F.R.D. 202, 210 (N.D.Ind.1993) (applying standard to expert's report); *Delcastor, Inc. v. Vail Ass'n.,* 108 F.R.D. 405, 408–409 (D.Colo.1985) (same); *MacDonald Sprague Roofing Co. v. USM Weather–Shield Sys. Co.,* 35 Fed. R.Serv.2d 1121, 1122 (D.Mass.1983) (same).

For the same reasons discussed above, the Court concludes that Plaintiff has failed to meet her burden to show that exceptional circumstances warrant discovery of Shofner's notes. The Court will therefore deny the Motion to Compel as to his notes.

## IV. Summary of Ruling

Based on the statements of counsel at the July 13, 2000 status conference, the Court denied as moot Plaintiff's Motion to Compel (doc. 68) with respect to Part I of the Motion, dealing with Plaintiff's First Interrogatories No. 7 and 8 and Plaintiff's Fourth Interrogatories. The Court also denied as moot all issues raised in Part II of the Motion except for the issues involving Plaintiff's Request for Production Nos. 15 and 16 and Privilege Log Items 2, 21 and 23. The Court hereby denies all remaining requests for an order compelling discovery contained in the Motion, except for Plaintiff's request for an order compelling Defendant to produce in response to Plaintiff's Request for Production No. 16. Those documents identified in Defendant's Privilege Log as Items 2, 21, and 23. Defendant shall produce those three documents within ten (10) days of the date that this Memorandum and Order is filed. Such production shall take place at the offices of Plaintiff's counsel or at any other location agreed upon by the Parties. Each Party shall bear her/its own expenses and fees incurred in this Motion.

IT IS SO ORDERED.