STUART, Justice.
USA Water Ski, Inc.,[1] petitions this Court for a writ of mandamus directing the trial court to vacate its discovery order compelling the production of a report that it says is privileged under the work-product doctrine. We grant the petition and issue the writ.

Facts

Colonel Biggs Water Ski Show Team (“Colonel Biggs”) is a member of USA Water Ski, the national governing body for organized competitive water skiing in the United States. Stewart Arthur Bieber was a skier for Colonel Biggs. On April 17, 2010, while skiing backwards and barefoot at a Colonel Biggs practice at Gateway Park Lake in Montgomery, Bieber collided with a stationary dock and suffered injuries that caused his death.
On February 29, 2012, Joy King Ewing f/k/a Joy King, as personal representative of Bieber’s estate, and Rachel K. Bieber (hereinafter referred to collectively as “Ewing”), filed a wrongful-death action against Colonel Biggs, USA Water Ski, and the following individual members of Colonel Biggs: Michael Robinson, the driver of the boat Bieber was skiing behind at the time of the accident, and Joel Langer, the safety observer in the boat. The complaint alleged negligence and wantonness in operating the boat, failure to provide adequate protection to Bieber, and failure to notify the Marine Police of the ski practice, as required by law.
During discovery, USA Water Ski produced to Ewing a 24-page privilege log, the last item on which is described as
“correspondence from Mark Neuberger to J.R. Wilson regarding Stewart Bie-ber’s incident. Jerry Leiting was carbon-copied on the communication. Neu-berger, Wilson, and Leiting are all members of USA Water Ski. Mr. Wilson asked Mr. Neuberger to prepare the correspondence due, in part, to his (Mr. Wilson’s) belief that there was a significant likelihood a lawsuit would be filed following Stewart’s death. Thus, we have withheld this correspondence. Please see affidavit from Mr. Wilson (attached).”
In the affidavit Wilson averred:
“1. My name is John Robert (J.R.) Wilson. I am over the age of nineteen years, and I have personal knowledge of the facts asserted herein.
*249 “2. I am a U.S.A. Water Ski Life Member and was in April 2010.
“3. In April 2010,1 was Chairman of U.S.A. Water Ski, Inc.’s National Ski Show Association (NSSA) Drivers’ Committee.
“4. By Monday, April 19, 2010, I had been informed of the April 17, 2010, incident involving Stewart Bieber. My understanding as of April 19th was Stewart Bieber struck a dock while water skiing backwards. My understanding was he was practicing his show run at the time of the incident.
“5. I asked Mark Neuberger to prepare a report concerning Stewart Bie-ber’s incident. Mr. Neuberger’s report, dated April 19, 2010, was forwarded to me. Jerry Leiting was copied on the report.
“6. In April 2010, Mr. Neuberger was Chief Driver Examiner for U.S.A. Water Ski’s National Show Ski Association’s Southern Region. In April 2010, Mr. Leiting was President of U.S.A. Water Ski’s National Show Ski Association.
“7. In light of the serious nature of the incident as reported to me, I expected Mr. Bieber’s family to file a lawsuit even though I did not believe U.S.A. Water Ski, the National Show Ski Association or Colonel Bigg’s [sic] Water Ski Show Team had done anything improper. Furthermore, my former wife is an attorney. Based on my familiarity with the legal system (through conversations with her over the years), I believed it was likely that Mr. Bieber’s family would file a lawsuit.
“8. I asked Mr. Neuberger to prepare the report in an effort to assist in the defense of an expected lawsuit. Neither I nor anyone at U.S.A. Water Ski routinely perform investigations, prepare incident reports nor interview witnesses in the normal course of business.
“9. I requested the report with the expectation that it would be confidential and shared only with attorneys in the court of defending an expected lawsuit. In fact, the report itself indicates that it should be kept confidential between Mr. Neuberger, Mr. Wilson and Mr. Leiting, all of which are U.S.A. Water Ski members.”
Ewing moved to compel production of Neuberger’s post-incident report, referred to in the privilege log as “correspondence.” In her motion, Ewing argued that USA Water Ski failed to carry its burden of establishing that the report met the elements of the work-product privilege. USA Water Ski responded, maintaining that Wilson’s affidavit provided sufficient evidence that Neuberger’s post-incident report was created in anticipation of litigation and, consequently, that it was privileged under the work-product doctrine. After conducting a hearing and reviewing the briefs filed by the parties, the trial court granted Ewing’s motion and ordered production of the report. USA Water Ski petitions this Court for a writ of mandamus directing the trial court to vacate its order.

Standard of Review

“ ‘Mandamus is an extraordinary remedy and will be granted only when there is “(1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court.” Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991). In Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala.2003), this Court announced that it would no longer review discovery or *250 ders pursuant to extraordinary writs. However, we did identify four circumstances in which a discovery order may be reviewed by a petition for a writ of mandamus. Such circumstances arise (a) when a privilege is disregarded, see Ex parte Miltope Corp., 828 So.2d 640, 644-45 (Ala.2001); (b) when a discovery order compels the production of patently irrelevant or duplicative documents the production of which clearly constitutes harassment or imposes a burden on the producing party far out of proportion to any benefit received by the requesting party, see, e.g., Ex parte Compass Bank, 686 So.2d 1135, 1138 (Ala.1996); (e) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party’s entire action or defense so that, in either event, the outcome of the case has been all but determined and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that an appellate court cannot review the effect of the trial court’s alleged error. The burden rests on the petitioner to demonstrate that its petition presents such an exceptional case — that is, one in which an appeal is not an adequate remedy. See Ex parte Consolidated Publ’g Co., 601 So.2d 423, 426 (Ala.1992).’
“Ex parte Dillard Dep’t Stores, Inc., 879 So.2d 1134, 1136-37 (Ala.2003).”
Ex parte Zoghby, 958 So.2d 314, 319-20 (Ala.2006).
“Discovery matters are within the trial court’s sound discretion, and this Court will not reverse a trial court’s ruling on a discovery issue unless the trial court has clearly exceeded its discretion.” Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala.2003).

Discussion

USA Water Ski contends that the trial court clearly exceeded its discretion in ordering production of Neuberger’s post-incident report because, it says, the report is privileged under the work-product doctrine. USA Water Ski maintains, and Ewing does not deny, that the element at issue in this case is whether the post-incident report was “prepared in anticipation of litigation.”
“ ‘ “Under Rule 26(b)(3), [Ala. R. Civ. P.,] the party objecting to discovery bears the burden of establishing the elements of the work-product exception.” ’ Ex parte Cummings, 776 So.2d 771, 774 (Ala.2000) (quoting Ex parte Garrick, 642 So.2d 951, 952-53 (Ala.1994)). Those elements are ‘that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.’ Johnson v. Gmeinder, 191 F.R.D. 638, 643 (D.Kan.2000); see also 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2024, at 336 (1994).
“Once ‘ “the parties are ‘at issue as to whether the documents] sought [were], in fact, prepared in anticipation of litigation,’ ” ’ the objecting party must make ‘ “[a]n evidentiary showing.” ’ Ex parte Cummings, 776 So.2d at 774 (quoting Ex parte State Farm [Mut.] Auto. Ins. Co., 761 So.2d 1000, 1002-03 (Ala.2000), quoting in turn Ex parte Garrick, 642 So.2d at 953 (emphasis added))....
“[When the determinative issue is whether the discovery to be produced was prepared in anticipation of litiga *251 tion] ‘[a] “blanket claim” as to the applicability of the work product doctrine does not satisfy the [objecting parties’] burden of proof.’ Disidore v. Mail Contractors of America, Inc., 196 F.R.D. 410, 413 (D.Kan.2000). ‘“That burden cannot be discharged by mere conclusory or ipse dixit assertions.” ’ Id. (quoting McCoo v. Denny’s, Inc., 192 F.R.D. 675, 680 (D.Kan.2000)). Where the record contains ‘no affidavits, memorandums, or reports to support the [objecting parties’ contentions],’ the court can only ‘speculate’ as to whether the materials ‘fall under the work-product exception.’ Ex parte Fuller, 600 So.2d 214, 216 (Ala.1992). See also Nutmeg Ins. Co. v. Atwell, Vogel & Sterling, A Div. of Equifax Servs., Inc., 120 F.R.D. 504, 510 (W.D.La.1988) (‘A clear showing must be made which sets forth the items or categories objected to and the reason for that objection.... Accordingly, the proponent must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that precise facts exist to support the claim of privilege.’).”
Ex parte Meadowbrook Ins. Group, Inc., 987 So.2d 540, 548 (Ala.2007).
USA Water Ski contends that it satisfied its burden of establishing that Neuberger’s post-incident report was privileged under the work-product doctrine because, it says, the evidence established that the report was prepared in anticipation of litigation. In support of its claim of privilege, USA Water Ski submitted an affidavit from Wilson, the chairman of USA Water Ski’s Drivers Committee, who asked Neuberger to prepare the report. In the affidavit, Wilson stated that because he was familiar with the legal system and in light of the serious nature of the accident that occurred while a skier was practicing for a USA Water Ski affiliated show, he believed that the skier’s family would file a lawsuit. He explained that he asked Neuberger, the chief driver examiner, to prepare a report about the accident for the purpose of assisting in the defense of a potential lawsuit. He further explained that an accident report is not routinely prepared by USA Water Ski personnel following an accident. USA Water Ski maintains that Wilson’s affidavit establishes that the report was prepared in anticipation of litigation and establishes that the report is protected by the work-product privilege.
“‘Under Rule 26(b)(3), [Ala. R. Civ. P.,] the party objecting to discovery bears the burden of establishing the elements of the work-production exception.’ Ex parte Garrick, 642 So.2d 951 (Ala.1994). The mere fact that litigation does eventually ensue does not, by itself, cloak materials with the protection of the work-product privilege. Sims v. Knollwood Park Hosp., 511 So.2d 154 (Ala.1987). ‘ “[T]he test should be whether, in light of the nature of the document and factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.” ’ Sims, 511 So.2d at 157 (quoting Binks Mfg. Co. v. National Presto Industries, Inc., 709 F.2d 1109, 1119 (7th Cir.1983)). The word (and concept) because is critical.”
Ex parte State Farm, Mut. Auto. Ins. Co., 761 So.2d 1000, 1002 (Ala.2000).
Here, USA Water Ski adequately explained that Neuberger’s post-incident report was prepared because of prospective litigation. Wilson explained that he asked Neuberger to prepare the report, which was not ordinarily prepared by USA Water Ski personnel following an accident, in anticipation of assisting in the defense of a *252 lawsuit. None of the evidence before us indicates that Neuberger’s post-incident report was prepared for any reason other than in preparation for eventual litigation. Therefore, USA Water Ski established a causal relationship between the anticipation of litigation and the production or use of the report.
Ewing maintains that Neuberger’s post-incident report is not protected by the work-product privilege. First, she argues that the evidence does not establish that the report was prepared in anticipation of litigation because Wilson’s affidavit does not specifically state that the report was prepared in anticipation of litigation to be brought against USA Water Ski. In support of her argument, Ewing cites Ex parte State Farm, supra. In that case, the plaintiff requested the production of documents from State Farm’s claims file that had been prepared before the lawsuit was filed. State Farm objected, arguing that the file was work product prepared in anticipation of litigation and therefore privileged. State Farm submitted an affidavit stating that it “ Vas under the impression and took the position that [the plaintiff] had planned to be involved in litigation regarding this accident.’ ” 761 So.2d at 1003. This Court held that the affidavit merely provided that State Farm generally anticipated litigation and did not establish that State Farm anticipated that litigation would be brought against it. Because State Farm did not present evidence indicating that the documents sought were prepared specifically in anticipation of litigation against State Farm, the Court held that the documents were not protected by the work-product privilege.
Here, Wilson’s affidavit adequately establishes that Neuberger’s post-incident report was prepared in anticipation of litigation against USA Water Ski. In his affidavit, Wilson explained his role and Neuberger’s role in the USA Water Ski organization, explained that the accident occurred during a practice for a USA Water Ski show, and explained that, although he “did not believe USA Water Ski, the National Show Ski Association or Colonel Bigg’s [sic] Water Ski Show Team had done anything improper,” he believed litigation was likely and that the report would be helpful to the defense. Although Wilson does not specifically state in his affidavit that he anticipated litigation to be initiated against USA Water Ski, that is a fair inference from a reading of his affidavit. Therefore, USA Water Ski adequately established that Neuberger’s post-incident report was created in anticipation of litigation against it.
Next, Ewing maintains that Neuberger’s post-incident report was not prepared in anticipation of litigation because the correspondence constituting the report was between non-attorney members of USA Water Ski, was not drafted at the direction of an attorney or in response to any notice that Ewing had retained an attorney, and was written two years before a lawsuit was filed. The evidence that the report was not prepared at the request of an attorney and that the report was prepared two years before a lawsuit was filed are factors to consider when determining whether the report was prepared in anticipation of litigation. However, the determinative question to be resolved in this case is whether Neuberger’s post-incident report “can fairly be said to have been prepared or obtained because of the prospect of litigation.” Sims v. Knollwood Park Hosp., 511 So.2d 154, 158 (Ala.1987). Cf. Ex parte Meadowbrook Ins. Group, 987 So.2d at 549 (“Thus, ‘the purpose for which a party created a document is the fundamental requirement of the Rule, and [regardless of whether] litigation is reasonably anticipated, certain, or even underway, a court *253 must still undertake an examination of why a document was produced.’ Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655, 661 (S.D.Ind.1991) (some emphasis added).”). Wilson’s affidavit establishes that, at the time he asked for the report, he recognized that the incident had resulted in the death of a skier while the skier was preparing for a USA Water Ski show and that litigation would ensue; it also establishes that this report was not created in the ordinary course of business. The facts and circumstances of this case support a conclusion that the report was prepared in anticipation of eventual litigation and, consequently, is protected by the work-product privilege.
“While the trial court, under the Alabama Rules of Civil Procedure, has broad discretionary authority regarding discovery matters, that authority is not unlimited. Ex parte Nissei Sangyo America, Ltd., 577 So.2d 912 (Ala.1991).” Ex parte Fuller, 600 So.2d 214, 216 (Ala.1992). USA Water Ski has shown that the trial court clearly exceeded its discretion in ordering the production of Neuberger’s post-incident report because the report is privileged under the work-produet doctrine.[2]

Conclusion

Based on the foregoing, we grant USA Water Ski’s petition and issue a writ of mandamus directing the trial court to vacate its order compelling USA Water Ski to produce Neuberger’s post-incident report.
PETITION GRANTED; WRIT ISSUED.
BOLIN, PARKER, MURDOCK, WISE, and BRYAN, JJ., concur.
SHAW, J., concurs specially.
MOORE, C.J., dissents.

. The name of this entity also appears in the materials before this Court as "U.S.A. Water Ski, Inc."

. "Even if the work-product privilege applies, Rule 26(b)(3), Ala. R. Civ. P., recognizes an exception when the party requesting the material can show substantial need coupled with undue hardship.” Ex parte Norfolk Southern Ry., 897 So.2d 290, 295 (Ala.2004). Ewing, however, does not argue that this exception applies here.