WISE, Justice.
On April 5, 2012, Donald R. Parker and Deborah Parker, Lorenzo Marin and Valerie Marin, Jeremiah Hollins and Carolyn Hollins, Douglas Urban and Ramona Ur *501 ban, Larry Pettway and Willie Pettway, Rita Collins, Arthur Wallace, Dale T. Wallace, Harday Earl McCracken, Melvin Davis and Kimbla Davis, Betty Downey, Larry Sullivan and Barbara Sullivan, and Donald Sawyer and Carolyn Sawyer (“the plaintiffs”) sued Mobile Gas Service Corporation (“Mobile Gas”); Jon Davis; James “Mike” Fine; Allen Hobbs; Sempra Pipelines and Storage Corporation; Sem-pra U.S. Gas and Power, LLC; Bay Gas Storage Company; Pine Energies, Inc.; Gulf South Pipeline Company, L.P. (“Gulf South”); Todd Waldrop; GS Pipeline Company, LLC; and fictitiously named defendants (hereinafter collectively referred to as “the defendants”). Pursuant to Rule 45, Ala. R. Civ. P., the plaintiffs filed a notice of intent to serve a nonparty subpoena on McFadden Engineering, Inc. (“McFadden”), requesting:
“All documents regarding any investigation, sampling, study, or work conducted concerning the subjects of odor or Mer-captan in the Eight Mile, Alabama community.”
Mobile Gas filed an objection to the notice of intent to serve a nonparty subpoena on McFadden and a motion for a protective order. It also filed, in camera, a privilege log listing 352 documents it contended were subject to the workproduct privilege. On October 12, 2012, the trial court ordered McFadden to turn over 349 of the 352 documents listed in the privilege log; overruled Mobile Gas’s objection to the subpoena; and denied Mobile Gas’s motion for a protective order. Mobile Gas then filed a petition for a writ of mandamus requesting that this Court direct the trial court to rescind its October 12, 2012, order compelling the production of the documents and denying Mobile Gas’s motion for a protective order. We grant the petition and issue the writ.

Factual Background and Procedural History

In 2008, at Gulf South’s facility in Eight Mile, there was a release of an odorant containing mercaptan. Federal regulations require that odorants be injected into natural gas, which is normally odorless, as a safety practice. In November 2011, the Alabama Department of Environmental Management (“ADEM”) was notified of an odor complaint in the Eight Mile Creek area that was adjacent to Cochran Road. In his affidavit, G. Edward Downing, general counsel for Mobile Gas, stated that, in fall 2011, Mobile Gas started receiving complaints about natural-gas leaks in the Eight Mile area; that the complaints centered around the facilities of Gulf South and Mobile Gas at Whistler Junction, Alabama; and that, on or before March 9, 2012, ADEM orally advised Mobile Gas that ADEM wanted Mobile Gas to conduct an investigation to either confirm or deny the presence of mercaptan in the subsurface soil or groundwater in the area. He stated that, also on March 9, 2012, Mobile Gas retained McFadden to assist with the investigation and with Mobile Gas’s response to ADEM.
Downing stated that, on March 12, 2012, J. Patrick Courtney, Jr., counsel for the plaintiffs, contacted him and told him he represented several people who were complaining about the odor in the Eight Mile area. ADEM issued a groundwater-incident letter to Mobile Gas on March 13, 2012, in which it required Mobile Gas to conduct the investigation. On March 22, 2012, Courtney and Downing had an in-person meeting regarding the complaints of odor in the Eight Mile area.
On April 5, 2012, the plaintiffs, who resided in the Eight Mile area, filed their complaint, alleging nuisance, aggravated nuisance, negligence, and wantonness against the defendants arising from the *502 release of mercaptan.[1] The complaint alleged that Gulf South sold natural gas to Mobile Gas; that possession of the natural gas was transferred at Gulf South’s Whistler Junction facility; that, at that facility, mercaptan was mixed and/or injected into the natural gas; that the defendants “caused and/or allowed natural gas and/or Mercaptan to escape from its facilities such that same have been released into the environment including groundwater aquifers, ponds, streams, and the atmosphere”; and that the defendants’ actions have exposed the plaintiffs, their families, and their properties to noxious mercaptan pollution.
On July 1, 2012, the plaintiffs filed their notice of intent to serve a nonparty subpoena on McFadden. On July 24, 2012, Mobile Gas filed its objection to the notice of the non-party subpoena to McFadden. In its objection, Mobile Gas contended that it had retained McFadden as a consultant in anticipation of litigation, which included assistance with the investigation of the cause of the odor that had precipitated the complaints, and that the requested discovery was protected by Rule 26(b)(4) and (5), Ala. R. Civ. P., because, it asserted, the request included documents “prepared by a consultant of Mobile Gas in anticipation of litigation and/or by an expert who was retained in anticipation of litigation but who, at this time, has not been designated as an expert to be called as a witness at trial.”
On August 8, 2012, the plaintiffs filed a response to Mobile Gas’s objection to the subpoena to McFadden. The plaintiffs asserted that Mobile Gas’s records show that it retained McFadden “to conduct an investigation ordered by ADEM well prior to the filing of the subject suit”; that Mobile Gas had previously produced thousands of pages of documents generated by McFadden; that McFadden had previously provided most of those documents to ADEM and the Environmental Protection Agency (“EPA”) and that those documents were “otherwise publicly distributed”; that “[cjlearly Mobile Gas did not view McFadden as a ‘trial expert,’ otherwise it would not have produced such voluminous documentation regarding McFadden’s work”; and that, “to the extent McFadden is a ‘trial expert,’ Mobile Gas has ‘waived’ any privilege or work product restriction on McFadden’s records.” The plaintiffs also contended that the workproduct doctrine does not apply to a party who was “ ‘not specially employed for a case,’ but whose work was provided in a different context”; that there had not been any showing that Armbrecht Jackson, LLP, a law firm that represented Mobile Gas in the action filed by the plaintiffs, had retained McFadden; that everything indicated that Mobile Gas had directly retained McFadden to handle the investigation required by ADEM; that there had not been any showing that McFadden was retained in connection with rendering legal advice to Mobile Gas; that the services rendered by McFadden had been “business” in nature; and that, based on the dissemination of McFadden’s work-product, “there was no ‘confidentiality’ attached thereto by McFadden, Mobile Gas, or Mobile Gas counsel. The assertion of ‘confidentiality’ did not arise until a subpoena was issued for ALL of the McFadden records.” (Emphasis and capitalization in original.) Finally, the plaintiffs contended that, even if McFadden had been specially employed in anticipation of litigation or in preparation for trial, discovery of the requested documents was permissible upon a showing of exceptional circumstances and that
*503 “[pjlaintiffs obviously cannot obtain the data obtained by McFadden — soil tests, air tests, groundwater tests, etc. on Mobile Gas/Gulf South properties since pre-suit dates.”
On August 23, 2012, Mobile Gas filed its “Reply to Plaintiffs’ Response to Defendant Mobile Gas’s Objection to Subpoena to McFadden Engineering, Inc. and Motion for a Protective Order.” In its reply, Mobile Gas stated:
“As set forth above, McFadden at all times has acted as an expert consultant to Mobile Gas in connection with the investigation and Mobile Gas’s response to ADEM and in anticipation of litigation and preparation for trial in connection with the litigation. While the reports prepared by McFadden submitted to ADEM and the underlying data (which have been produced by Mobile Gas) and McFadden’s communications with ADEM are not protected, McFadden’s work for Mobile Gas as a litigation consultant both with respect to the investigation and ADEM demand and the litigation is protected by Rules 26(b)(4) and (5) of the Alabama Rules of Civil Procedure.”
Mobile Gas further stated:
“Mobile Gas was advised by ADEM before Mobile Gas contacted McFadden on March 9, 2012 that ADEM would require the investigation and Mobile Gas was contacted by Plaintiffs’ counsel on March 12, 2012, only three days later.... When ADEM (and then Plaintiffs’ counsel) contacted Mobile Gas, Mobile Gas reasonably and correctly believed that the prospect of regulatory proceedings by ADEM and litigation with certain odor complainants was highly probable.... Mobile Gas hired McFadden because ADEM was requiring action by Mobile Gas. McFadden, therefore, acted as a consultant in anticipation of litigation and the documents created by McFadden were created when Mobile Gas was anticipating and responding to litigation. See Atlantic Richfield Co., (No. 93-CV-0950E(H), Aug. 21, 1997) [ (not reported in F.Supp.) ] (documents are created in anticipation of litigation when they are prepared with a subjective belief that litigation might ensue and when the subjective belief is objectively reasonable).
“Federal Courts have extended the work-product protection to documents prepared by environmental consultants in response to an inquiry from a governmental environmental agency. See In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management), 357 F.3d 900, 910 (9th Cir.[2004]) (holding that certain ‘dual purpose’ documents created in response to the EPA information request and consent order were protected from discovery by the work product doctrine as they were created because of potential litigation with the EPA); Atlantic Richfield Co. .... (holding that documents created by environmental consultants were protected from discovery by the work-product doctrine); Bituminous Cas. Corp. v. Tonka Corp., 140 F.R.D. 381 (D.Minn.1992) (applying the work-product protection to documents created by an environmental consultant in response to a state pollution agency’s directives to conduct investigations and prepare reports). Therefore, the McFadden documents do not lose the work-product protection simply because McFadden has performed dual roles by aiding in the ADEM investigation and acting as a trial consultant for Mobile Gas.”
Mobile Gas also asserted that it had not waived its claim of workproduct privilege because it had not produced any docu- *504 merits that related to McFadden’s role as a litigation consultant. Finally, Mobile Gas asserted that there were no exceptional circumstances that should allow the plaintiffs to obtain production of McFadden documents that related to McFadden’s role as a litigation consultant. In support of its reply and motion for a protective order, Mobile Gas submitted affidavits from Downing; Norman Waldrop, counsel for Mobile Gas who practiced with the law firm of Armbreeht Jackson, LLP; and Brad Newton, a professional engineer with McFadden.
On August 26, 2012, Mobile Gas filed a “Motion to Strike or Quash and Supplemental Objection to Issuance of Subpoena to McFadden Engineering, Inc.” On August 28, the trial court ordered Mobile Gas to produce a privilege log of all documents it claimed to be protected. On September 27, 2012, Mobile Gas filed a “Motion for Court to Amend Order Regarding McFadden Engineering Documents,” in which it moved the trial court for leave to submit its privilege log in camera. On October 1, 2012, Mobile Gas submitted a privilege log to the trial court in camera.
On October 12, 2012, the trial court entered an order stating:
“In response to the plaintiffs’ oral motion to compel and after a review of the privilege log of Mobile Gas with respect to the McFadden Engineering documents, it is ORDERED that all privilege log documents be produced except for privilege log documents numbered 12, 35, and 41.
“The Court further DENIES Mobile Gas’ objection to issuance of a subpoena to McFadden Engineering and further DENIES the defendants’ motion for a protective order.”
(Capitalization in original.) On November 26, 2012, Mobile Gas filed its petition for a writ of mandamus with this Court.

Standard of Review

“ ‘Discovery matters are within the trial court’s sound discretion, and this Court will not reverse a trial court’s ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala.1991). Accordingly, mandamus will issue to reverse a trial court’s ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions.’
“Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala.2003).
“Moreover, this Court will review by mandamus only those discovery matters involving (a) the disregard of a privilege, (b) the ordered production of ‘patently irrelevant or duplicative documents,’ (c) orders effectively eviscerating ‘a party’s entire action or defense,’ and (d) orders denying a party the opportunity to make a record sufficient for appellate review of the discovery issue. 872 So.2d at 813-14. The order challenged in this case involving alleged work product and the attorney-client privilege is reviewable under category (a).”
Ex parte Meadowbrook Ins. Group, Inc., 987 So.2d 540, 547 (Ala.2007). The order challenged here is likewise reviewable under category (a).

Discussion

I.
Mobile Gas argues that the trial court erroneously denied its motion for a protective order because, it says, McFadden’s work as a consultant for Mobile Gas *505 constitutes workproduct that is protected by Rule 26(b)(4) and (5), Ala. R. Civ. P. Specifically, Mobile Gas contends that McFadden worked as a litigation consultant; that the documents produced by McFadden constituted materials produced for a party; and that the work performed by McFadden was performed in anticipation of litigation.
Rule 26(b), Ala. R. Civ. P., provides, in pertinent part:
“(b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
[[Image here]]
“(4) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(5) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative (including the other party’s attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party’s case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
[[Image here]]
“(6) Claims of Privilege or Protection of Trial-Preparation Materials.
“(A) When a party withholds information otherwise discoverable under these rules on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and, upon written request by any other party, shall be supported by a description of the nature of the documents, communications, or things not produced sufficient to enable the demanding party to contest the claim. This supporting description shall be served within twenty-one (21) days of the date a request is served, unless otherwise ordered.”
In Meadowbrook, supra, this Court addressed the workproduct privilege as follows:
“According to the petitioners, ‘the documents requested by Andrews fall squarely within the protection provided by [Ala. R. Civ. P. 26(b)(3)[2]], as Andrews is seeking information about “the mental impressions, conclusions, opinion or legal theories” surrounding the decision to terminate [his] worker’s compensation benefits.’...
[[Image here]]
“Andrews contends that the petitioners have ‘failed to meet [their] burden of [showing] that the adjuster’s notes are work product.’ Andrews brief, at 17. This is so, because, he argues, the petitioners have presented no evidence indicating that the claims notes, or anything else in their files were ‘prepared in anticipation of litigation or for trial.’ We agree.
*506 “ ‘ “Under Rule 26(b)(3), the party objecting to discovery bears the burden of establishing the elements of the work-product exception.” ’ Ex parte Cummings, 776 So.2d 771, 774 (Ala.2000) (quoting Ex parte Garrick, 642 So.2d 951, 952-58 (Ala.1994)). Those elements are ‘that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.’ Johnson v. Gmeinder, 191 F.R.D. 638, 643 (D.Kan.2000); see also 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2024, at 336 (1994).
“Once ‘ “the parties are ‘at issue as to whether the documents] sought [were], in fact, prepared in anticipation of litigation,’ ” ’ the objecting party must make ‘ “[a]n evidentiary showing.” ’ Ex parte Cummings, 776 So.2d at 774 (quoting Ex parte State Farm Auto. Ins. Co., 761 So.2d 1000, 1002-03 (Ala.2000), quoting in turn Ex parte Garrick, 642 So.2d at 953 (emphasis added)). It is Andrews’s position — and the petitioners do not deny — that Andrews’s motions to compel placed the parties ‘at issue’ as to whether the claims file was prepared in anticipation of litigation.
“In such a case, ‘[a] “blanket claim” as to the applicability of the work product doctrine does not satisfy the [objecting parties’] burden of proof.’ Disidore v. Mail Contractors of America, Inc., 196 F.R.D. 410, 413 (D.Kan.2000). “‘That burden cannot be discharged by mere conclusory or ipse dixit assertions.” ’ Id. (quoting McCoo v. Denny’s, Inc., 192 F.R.D. 675, 680 (D.Kan.2000)). Where the record contains ‘no affidavits, memorandums, or reports to support the [objecting parties’ contentions],’ the court can only ‘speculate’ as to whether the materials ‘fall under the work-product exception.’ Ex parte Fuller, 600 So.2d 214, 216 (Ala.1992). See also Nutmeg Ins. Co. v. Atwell, Vogel & Sterling, a Div. of Equifax Servs., Inc., 120 F.R.D. 504, 510 (W.D.La.1988) (‘A clear showing must be made which sets forth the items or categories objected to and the reason for that objection.... Accordingly, the proponent must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that precise facts exist to support the claim of privilege.’).
“In that connection, Francis Powell argues that the ‘[petitioners need not prove that there was any “anticipation” of litigation, because litigation had already commenced when these documents were created.’ Francis Powell’s reply brief, at 17. We disagree.
“ “Where an insurer has a separate and independent contractual duty to investigate a claim, the insurer must satisfy the requirements of Rule 26(b)(3)[, Ala. R. Civ. P.,] ... by showing more than simply when a document was prepared. The insurer ... must show why each document was prepared and how it was used.’ Ex parte State Farm Mut. Auto. Ins. Co., 761 So.2d 1000, 1004 (Ala.2000) (Lyons, J., concurring specially) (emphasis added). There is a ‘requirement [in] Rule 26(b)(3) of a causal relationship between the impending litigation and the production or use of the documents.’ Id. The inquiry ‘ “ ‘should be whether, in light of the nature of the document and factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.’ ” ’ 761 So.2d at 1002 (opinion of the Court)(quoting Sims v. Knollwood Park Hosp., 511 So.2d 154, 157 (Ala.1987), quoting in turn [Binks ] Mfg. Co. *507 v. National Presto Indus., Inc., 709 F.2d 1109, 1119 (7th Cir.1983)). Thus, ‘the purpose for which a party created a document is the fundamental requirement of the Rule, and [regardless of whether] litigation is reasonably anticipated, certain, or even underway, a court must still undertake an examination of why a document was produced.’ Harper v. Auto-Owners Ins. Co. 138 F.R.D. 655, 661 (S.D.Ind.1991) (some emphasis added). See also Stout v. Illinois Farmers Ins. Co., 150 F.R.D. 594, 597 (S.D.Ind.1993); Schmidt v. California State Auto. Ass’n, 127 F.R.D. 182, 184 (D.Nev.1989) (‘The majority of cases that have dealt with the issue of whether investigative materials prepared by insurance claims adjusters is work-product prepared in anticipation of litigation have held that since insurance companies have a routine duty to investigate accidents, such materials are not prepared in anticipation of litigation but are prepared in the ordinary course of business absent unique circumstances showing the contrary.’).
“In this case, the petitioners had an independent duty to handle and administer Andrews’s worker’s compensation claim. Consequently, they cannot satisfy Rule 26(b)(3) by a blanket objection to discovery on the basis that the materials sought are work product.
“Meadowbrook also contends that it cannot comply with the requirement that it present ‘evidence that the contents of the adjuster’s notes fall within the ... definition of work product privilege .... without disclosing the communication itself, which is precisely what is sought to be protected.’ Meadowbrook’s reply brief, at 11-12. Again, we disagree. Rule 26(b)(5) [now Rule 26(b)(6)(A)] states, in pertinent part:
“ ‘When a party withholds information otherwise discoverable under these rules on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and, upon written request by any other party, shall be supported by a description of the nature of the documents, communications, or things not produced sufficient to enable the demanding party to contest the claim.’
“(Emphasis added.)[2]
“Compliance with Rule 26 does not obviate the protection at issue. As the federal counterpart to Rule 26 provides:
“ ‘When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
“‘(i) expressly make the claim; and
“‘(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.’
“Fed.R.Civ.P. 26(b)(5)(A). In other words, these rules contemplate that an objecting party’s showing need not ‘reveal[ ] information itself privileged or protected,’ but must include enough information regarding each document for which the protection is claimed to ‘enable the court to determine’ the validity of the objections....
*508 987 So.2d at 547-50.
The issue in this case is whether the documents on the privilege log were prepared in anticipation of litigation. The plaintiffs argue that Mobile Gas has not satisfied its burden of proving that the workproduct privilege applies to the documents. Specifically, they contend that the affidavits Mobile Gas submitted in support of its objection to the nonparty subpoena and motion for a protective order did not contain any specific facts in support thereof. The plaintiffs assert:
“Mr. Downing’s affidavit admits that McFadden was retained ‘to assist with the investigation and Mobile Gas’s response to ADEM.’ As to McFadden’s role as a trial consultant, Mr. Downing simply states: ‘Since McFadden was retained, McFadden has also served as a consultant to Mobile Gas with respect to the defense of this action.... ’ There are no facts which show that McFadden was hired because of this litigation or how it has been used as a trial consultant in a capacity different from its original retention. Mr. Downing states that he anticipated litigation on March 9, 2012, when Mobile Gas retained McFadden, because he met with Plaintiffs’ counsel March 22, 2012 well after McFadden had been retained. While implausible at best, such does not establish a reasonable expectation of litigation at the time McFadden was retained as required under Ex parte State Farm Mut. Auto. Ins. Co., 761 So.2d 1000, at 1003 (Ala.2000) (mere fact that party has retained counsel does not give rise to automatic reasonable expectation of litigation).
“Mr. Waldrop’s affidavit admits that his firm was not hired until after McFadden had already been retained and had begun its investigation for Mobile Gas. There are no facts in this affidavit speaking to when or why McFadden was retained; clearly McFadden was not retained by defense counsel.
“Finally, Mr. Newton’s affidavit states that Mobile Gas retained McFadden for an ‘investigation requested by ADEM.’ Mr. Newton’s affidavit also summarily states that in addition to the ADEM investigation, McFadden ‘also has provided services as a litigation consultant’ without any further facts supporting this claim.
“These affidavits include no specific facts supporting Mobile Gas’s objection. Instead these are classic examples of the type of ‘blanket claims’ that will not support a work-product objection. The trial court was well within its discretion in finding that Mobile Gas had failed to meet its burden of providing sufficient evidentiary support for its objection.”
Additionally, the plaintiffs contend that “the evidence is clear that McFadden was retained ‘in the regular course of business, rather than for purposes of litigation.’ ” They go on to assert:
“In this case, Mobile Gas retained McFadden on March 9, 2012; two weeks before Mobile Gas had met with Plaintiffs’ counsel and almost a month before suit was filed.
“Because Mobile Gas retained McFadden before being apprised of this lawsuit, it could not have retained McFadden in reasonable anticipation thereof. Mobile Gas hired McFadden to perform necessary tests, just as a damaged person might hire a doctor or contractor.
“To be protected the material ‘must have been produced because of that prospect of litigation and for no other *509 purpose.’ Harper v. Auto-Owners [Ins.] Co., 138 F.R.D. 655, 660 (N.D.Ind.1991) (emphasis added); Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 604 (8th Cir.1977). In other words, ‘the primary motivating purpose behind the creation of a document or investigation report must be to aid in possible future litigation.’ Sims v. Knollwood Park Hosp., 511 So.2d 154, 158 (Ala.1987) (citing Binks Manuf. Co. v. Nat’l Presto Indus., Inc., 709 F.2d 1109, 1119 (7th Cir.1983)).
“When the material in question is produced in the ordinary and regular course of a party’s business, the material is outside the scope of the work-product doctrine and therefore subject to discovery. See, 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2024 at 198-99 (1970). Material created as part of a ‘more or less routine investigation’ conducted ‘in the ordinary course of business’ are not considered work-product. Janicker v. George Wash. Univ., 94 F.R.D. 648, 650 (D.D.C.1982).
“The simple fact of the matter in this case is that Mobile Gas retained McFadden to investigate the mercaptan situation generally and as required by ADEM. Mobile Gas did not hire McFadden for litigation purposes, just as an injured person does not hire a doctor for ‘litigation purposes,’ and it is ludicrous to assert otherwise after the doctor has set about to provide necessary medical care.
“The ADEM investigation is a routine regulatory proceeding. Mobile Gas viewed it as such as it provided a wealth of documents from McFadden prior to the issuance of a subpoena directly to McFadden. Armbrecht Jackson, Mobile Gas’s trial lawyers, did not hire McFadden. McFadden was already on the job, working on the ADEM investigation, when the Armbrecht firm was hired. Mobile Gas had hired McFadden to perform a similar environmental work for a number of years_ Mobile Gas produced the McFadden documents it had because it knew such work was not protected from discovery.”
(Respondents’ brief, at pp. 21-22.)
In this case, Mobile Gas retained McFadden on March 9, 2012, to assist with the investigation ordered by ADEM. Federal courts have recognized that the work-product privilege under Rule 26, Fed. R.Civ.P., would apply to documents
“even if they were prepared in anticipation of litigation involving only government agencies and were not prepared in anticipation of litigation involving private parties ... because a party in one action may assert work product protection as to documents prepared in anticipation of another action, particularly where the two actions are related. See F.T.C. v. Grolier Inc., 462 U.S. 19, 25, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983); Maertin[ v. Armstrong World Industries, Inc., 172 F.R.D. 143,] 150 n. 3 [ (D.N.J.1997) ]; Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa., [ (No. 90 Civ. 7811, Sep. 16, 1994) ] (S.D.N.Y.1994) [ (not reported in F.Supp.) ].”
Atlantic Richfield Co. v. Current Controls, Inc., note 3 (No. 93-CV-0950E(H), Aug. 21, 1997) (S.D.N.Y.1997) (not reported in F.Supp.).[3]
*510 In Martin v. Monfort, 150 F.R.D. 172 (D.Colo.1993), the United States District Court for the District of Colorado stated:
“Rule 26(b)(3) of the Federal Rules of Civil Procedure contemplates a sequential step approach to resolving work product issues. First, the party seeking discovery must show that the subject documents or tangible things are relevant to the subject matter involved in the pending litigation and are not privileged. Fed.R.Civ.P. 26(b)(1). Once such a showing has been made, the burden shifts to the party seeking protection to show that the requested materials were prepared in anticipation of litigation or for trial by or for the party or the party’s attorney, consultant, surety, indemnitor, insurer or agent. Fed.R.Civ.P. 26(b)(3). Such a showing may be made by affidavit, deposition testimony, answers to interrogatories, and the like. If the Court concludes that the items were prepared in anticipation of litigation, the burden shifts back to the requesting party to show: (a) a substantial need for the materials in the preparation of the party’s case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means. Fed.R.Civ.P. 26(b)(3). Finally, even if substantial need and unavailability are demonstrated, the Court must distinguish between factual work product, and mental impressions, opinions, and conclusions, for the latter are rarely, if ever, subject to discovery. See Toledo Edison Co. v. G A Technologies, 847 F.2d 335, 339-340 (6th Cir.1988); In re Air Crash Disaster at Detroit Metropolitan Airport, 130 F.R.D. 641, 643 (E.D.Mich.1989).
“For purposes of the pending motion, the Court will assume that the time and motion studies have sufficient relevance to meet the general discoverability requirements of Fed.R.Civ.P. 26. No contention has been advanced by Monfort that the studies fall within the attorney-client privilege. Consequently, the Court will begin its inquiry by addressing the question of whether the time and motion studies were prepared in anticipation of litigation, and, therefore, protected attorney work product.
“There is no requirement that litigation have actually commenced in order to assert work product. On the other hand, the fact that litigation has commenced does not automatically bring the work product doctrine into play. 8 Wright & Miller, Federal Practice & Procedure § 2024, at pp. 197-98. ‘[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.’ Id. at 198. See also Ownby v. United States, 293 F.Supp. 989 (W.D.Okla.1968) (emphasis [on ‘prospect’] added).
“The affidavit of P. Kay Norton, Vice President and General Counsel for Mon-fort, reveals that the time and motion studies were performed at her direction after she had been contacted by the Department of Labor regarding issues surrounding certain activities of Monfort employees performed before and after their normal work day. The affidavit states that ‘[i]n light of my contacts with Mr. Van Hook [the Department of Labor Compliance Officer], I believed that litigation might result over the issues ... and in anticipation of such litigation, I directed specifically that certain managerial employees of Monfort, Inc. gather information regarding the time spent by the Company’s employees on these preliminary and postliminary activities.’ Norton Aff. at 1-2.
*511 “Investigation by a federal agency presents more than a remote prospect of future litigation, and provides reasonable grounds for anticipating litigation sufficient to trigger application of the work product doctrine. See, e.g., Kent Corporation v. National Labor Relations Board, 580 F.2d 612, 628 (5th Cir.), cert. denied, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976); In re LTV Securities Litigation, 89 F.R.D. 595, 612 (N.D.Tex.1981). Additionally, studies or tests conducted after a party is aware of potential litigation have been held to be within the scope of the work product immunity doctrine. In re Air Crash Disaster at Detroit Metropolitan Airport, 130 F.R.D. at 644; Interstate Production Credit Ass’n v. Fireman’s Fund Ins. Co., 128 F.R.D. 273 (D.Or.1989). Accordingly, the evidentiary record and the case law amply support Monfort’s claim that the time and motion studies constitute work product.”
150 F.R.D. at 172-73 (some emphasis added). Cf. Travelers Casualty & Surety Co. v. Alabama Gas Corp., 117 So.3d 695, 707 (Ala.2012) (concluding, in response to a certified question from a federal district court, that, under Alabama law, a “potentially responsible party” letter from the Environmental Protection Agency pursuant to Comprehensive Environmental Response Compensation and Liability Act provisions was sufficient to satisfy the “suit” requirement under comprehensive general-liability insurance policies).
In his affidavit, Downing stated:
“6. Mobile Gas retained McFadden Engineering, Inc. (‘McFadden’) by telephone call on March 9, 2012 to assist with the investigation and Mobile Gas’s response to ADEM. McFadden has prepared plans for the work for submission to ADEM (e.g., the March 30, 2012 Scope of Work), performed certain aspects of the investigation, including collecting data, interfaced with ADEM, and prepared reports that were submitted to ADEM on behalf of Mobile Gas. Since March 9, 2012 McFadden has consulted with Mobile Gas with respect to the investigation and Mobile Gas’s response to ADEM. Since McFadden was retained, McFadden also has served as a consultant to Mobile Gas with respect to the defense of this action and the four related actions and the preparation of this action and the four related actions for trial.
“7. Mobile Gas has produced McFadden’s communications with ADEM, McFadden’s reports submitted to ADEM, and the underlying data submitted to ADEM. Mobile Gas has not produced documents created by McFadden in aiding Mobile Gas as a litigation consultant.
“8. When Mobile Gas retained McFadden on March 9, 2012, ADEM had contacted Mobile Gas and had demanded that Mobile Gas conduct a groundwater investigation. As of March 9, 2012, litigation with certain odor complainants was highly probable, which was confirmed when I was contacted by Mr. Courtney on March 12, 2012. Further, it is not in Mobile Gas’s ordinary course of business to undertake the type of investigation required by ADEM or have an environmental consultant produce the types of documents created by McFadden.”
(Emphasis added.)
Additionally, in his affidavit, Waldrop stated:
“4. Mobile Gas first engaged Arm-brecht Jackson, LLP to represent it in this action on or about April 6, 2012. Since Armbrecht Jackson was engaged by Mobile Gas to represent it in this action, I have communicated with *512 McFadden Engineering, Inc. (‘McFadden’) regarding the Alabama Department of Environmental Management (‘ADEM’) investigation and the above-styled action. After being retained on or about April 6, 2012, I subsequently became in charge of the investigation required by ADEM and the investigation in connection with the defense of this case and the related cases.
“5. The McFadden documents sought by Plaintiffs include documents and communications generated by McFadden on behalf of Mobile Gas in response to AJDEM’s demands and in defense of the litigation.
“6. Mobile Gas has produced McFadden’s communications with ADEM, McFadden’s reports submitted to ADEM, and the underlying data submitted to ADEM. Alternatively, Mobile Gas has not produced documents created by McFadden in its role as a litigation consultant to Mobile Gas.”
(Emphasis added.)
Finally, in his affidavit, Newton stated:
“3. On March 9, 2012, Mobile Gas ... contacted me by telephone to request McFadden’s assistance in a subsurface investigation requested by [ADEM] to confirm or deny the presence of Mercaptan in the subsurface soil or groundwater in the vicinity of a release of Mercaptan in June 2008 on property owned by Gulf South Pipeline Company, L.P.
“4. Since March 9, 2012, McFadden has acted as a consultant to Mobile Gas with respect to the investigation and Mobile Gas’s response to ADEM’s demands and also has provided services as a litigation consultant with respect to this action (and the four related actions) (the ‘litigation’).
“5. McFadden’s documents include documents prepared by McFadden on behalf of Mobile Gas both with respect to the investigation and Mobile Gas’s response to ADEM and with respect to Mobile Gas’s defense of the litigation.”
Based on these affidavits, Mobile Gas has established that the documents as to which it was claiming a privilege were prepared or obtained in anticipation of litigation.
The plaintiffs contend that, even if the requested documents did constitute workproduct, Mobile Gas waived any claim of workproduct privilege because it had previously produced voluminous documents prepared by McFadden related to the ADEM investigation. “The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived.” United States v. Nobles, 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).
“Work product protection may be waived, and the party invoking the privilege must prove that it has not waived the protection. Eden Isle Marina, Inc. v. United States, 89 Fed.Cl. 480, 503 (2009) (citing Evergreen Trading, LLC v. United States, 80 Fed.Cl. 122, 127 (2007)). Waiver occurs when a party discloses material ‘ “in a way inconsistent with keeping it from the adversary,”’ Evergreen, 80 Fed.Cl. at 133 (quoting United States v. Mass. Inst. of Tech., 129 F.3d 681, 687 (1st Cir.1997)), such as using material as a basis for an affirmative defense, id. at 130.”
Salem Fin., Inc. v. United States, 102 Fed.Cl. 793, 796 (2012).
In their response to Mobile Gas’s objection to the nonparty subpoena, the plaintiffs asserted:
“4. On June 1, 2012, Mobile Gas produced thousands of pages of documents generated by McFadden. Most of those documents were previously provided by *513 MeFadden to the Alabama Department of Environmental Management, EPA, and otherwise publicly distributed. Just last week, Mobile Gas produced McFadden’s latest ‘Preliminary Investigative Report’ dated July 27, 2012, excerpts of which are attached hereto as Exhibit B. In that report, MeFadden concluded that mercaptan being emitted into the atmosphere from the ‘springs’ adjacent to the Whistler Junction facility flowed down-gradient from the 2008 Mobile Gas mercaptan spill site. This conclusion was based on corresponding mercaptan readings found at the 2008 spill site, down-gradient from the spill site, in the ‘springs’ which emit the mercaptan into the atmosphere, and in the ‘pond’ just downstream from the springs. Despite this overwhelming evidence from its own ‘trial consultant,’ Mobile Gas continues to ‘deny1 that it is responsible for the mercaptan nuisance which still exists (DAILY) in the Eight Mile community.
“5. Examples of MeFadden documentation (attached as Exhibit C) previously produced by Mobile Gas on June 1, 2012 include:
“(a) Internal emails and documents between Mobile Gas and MeFadden relating directly to McFadden’s investigation work ...;
“(b) McFadden’s billing records for its investigation ...;
“(c) Drafts of the Scope of Work MeFadden provided to Mobile Gas and ADEM ...;
“(d) Final Scope of Work Agreement between MeFadden and Mobile Gas ...;
“(e) Documents relating to McFadden’s air monitoring and investigation
“(f) Safety meeting attendance sheets providing names and employers for all in attendance ...;
“(g) Internal Mobile Gas notes on its meetings with MeFadden regarding McFadden’s Eight Mile pollution investigation ...;
“(h) MORE — the foregoing are just examples of MeFadden documents produced by Mobile Gas — there are literally thousands of such documents in the Mobile Gas production. Mobile Gas defense counsel is not a recipient on any of the scores of emails between MeFadden, Mobile Gas, and ADEM.
“6. Most all of these documents were made ‘public’ via publication to ADEM, etc. Clearly, Mobile Gas did not view MeFadden as a ‘trial expert,’ otherwise it would not have produced such voluminous documentation regarding McFadden’s work. To the extent MeFadden is a ‘trial expert,’ Mobile Gas has ‘waived’ any privilege or work product restriction on McFadden’s records.”
In his affidavit, Downing acknowledged that Mobile Gas had produced McFadden’s communications with ADEM, McFadden’s reports that had been submitted to ADEM, and the underlying data that had been submitted to ADEM. However, he also stated that “Mobile Gas has not produced documents created by MeFadden in aiding Mobile Gas as a litigation consultant.” Further, in his affidavit, Waldrop stated that Mobile Gas had produced
“MeFadden’s communications with ADEM, McFadden’s reports submitted to ADEM, and the underlying data submitted to ADEM. Alternatively, Mobile Gas has not produced documents created by MeFadden in its role as a litigation consultant to Mobile Gas.”
(Emphasis added.) Additionally, in the privilege log submitted, Mobile Gas stated that there were copies of correspondence and e-mails in McFadden’s file that reflected communications to and from employees of ADEM and to and from repre *514 sentatives of Gulf South and an entity named Boardwalk LLP and that Mobile Gas did not contend that those items were protected from discovery. Finally, as the plaintiffs noted in their response to Mobile Gas’s objection, most of the documents Mobile Gas had produced had already been made public by publication to ADEM. Based on the foregoing, it does not appear that Mobile Gas has treated the documents for which it claims a privilege in a manner inconsistent with keeping them from an adversary. See Salem Fin., Inc., 102 Fed.Cl. at 796.
Because Mobile Gas satisfied its burden of demonstrating that the requested documents constituted workproduct, the burden shifted to the plaintiffs to demonstrate a substantial need for the undisclosed documents and to show that they were “unable without undue hardship to obtain the substantial equivalent of the materials by other means.” In this regard, the plaintiffs merely asserted in their response to Mobile Gas’s objection:
“ ‘Exceptional circumstances’ can arise when an expert has unique access to factual information, such as where the expert performed tests under circumstances where the opposing parties do not have access to such information. Plaintiffs obviously cannot obtain the data obtained by MeFadden — soil tests, air tests, groundwater tests, etc. on Mobile Gas/Gulf South properties since pre-suit dates.”
However, in his affidavit, Waldrop specifically stated that Mobile Gas had produced “McFadden’s communications with ADEM, McFadden’s reports submitted to ADEM, and the underlying data submitted to ADEM.” (Emphasis added.) Additionally, in their attachments to their brief, the plaintiffs have provided this Court with copies of laboratory reports that include results on testing from various samples. Thus, the plaintiffs have not satisfied their burden of establishing that they have substantial need of the documents as to which Mobile Gas is claiming a privilege.
II.
Mobile Gas also argues that the plaintiffs have not complied with the procedures set forth in Rule 26(b)(5)(B), Ala. R. Civ. P., for obtaining discovery from a nontestifying expert. Specifically, Mobile Gas contends that, because it retained MeFadden in anticipation of litigation and because it has not designated MeFadden as an expert at trial, the plaintiffs may obtain discovery from MeFadden only pursuant to Rule 26(b)(5)(B), Ala. R. Civ. P.; that Rule 26(b)(5)(B), Ala. R. Civ. P., requires a showing of exceptional circumstances; and that the plaintiffs have not made a showing of exceptional circumstances. Rule 26(b)(5)(B), Ala. R. Civ. P., provides, in pertinent part:
“(5) Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
[[Image here]]
“(B) A party may discover facts known or opinions held by an expert who has been retained, specially employed or assigned by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 85(b)[4] or upon a showing of exceptional circumstances *515 under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.”
McFadden has not been designated as an expert witness at trial. Further, as we discussed in Part I of this opinion, Mobile Gas satisfied its burden of establishing that it had retained McFadden in anticipation of litigation. Thus, pursuant to Rule 26(b)(5)(B), Ala. R. Civ. P., the plaintiffs will be allowed to discover facts or opinions from McFadden only “upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.”
“Under Rule 26(b)(4)(B), the party seeking discovery from the non-testifying expert consulted in anticipation of litigation ‘carries a heavy burden in demonstrating the existence of exceptional circumstances.’ Ager [v. Jane C. Stormont Hosp. & Training Sch. for Nurses ], 622 F.2d [496,] 503 [ (10th Cir.1980) ] (internal quotations omitted). Exceptional circumstances are shown if the party seeking discovery is unable to obtain equivalent information from other sources. Eliasen v. Hamilton, 111 F.R.D. 396, 400 (N.D.Ill.1986) (internal quotation omitted). The party seeking discovery may meet this exceptional circumstances standard in one of two ways. First, the moving party may show that the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observes it but before the moving party’s expert has an opportunity to observe it. See Disidore v. Mail Contractors of Am., Inc., 196 F.R.D. 410, 417 (D.Kan.2000); Hartford Fire Ins. [v. Pure Air on the Lake Ltd. P’ship ], 154 F.R.D. [202,] 207 [ (N.D.Ind.1993) ]. Second, the moving party may show there are no other available experts in the same field or subject area. See Bailey v. Meister Brau, Inc., 57 F.R.D. 11, 14 (N.D.Ill.1972) (party seeking discovery must prove that opinions by others on the subject are unavailable).”
Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co., 128 F.Supp.2d 1148, 1151-52 (N.D.Ill.2001).
In this case, the plaintiffs have not made any showing of such exceptional circumstances. Further, as we noted in Part I of this opinion, the plaintiffs have not established that they have substantial need of the documents as to which Mobile Gas is claiming a privilege. Because the plaintiffs did not satisfy their burden under Rule 26(b)(5)(B), Ala. R. Civ. P., they were not entitled to obtain discovery of any facts known to or opinions held by McFadden. See Ex parte Cryer, 814 So.2d 239 (Ala.2001).

Conclusion

Based on the foregoing, Mobile Gas has established that the trial court exceeded its discretion when it disregarded the workproduct privilege and entered an order compelling Mobile Gas to produce the documents included in the privilege log and when it denied Mobile Gas’s motion for a protective order. Thus, Mobile Gas has established a clear legal right to a protective order regarding the production of the documents listed on the privilege log it submitted to the trial court. Accordingly, we grant Mobile Gas’s petition for the writ of mandamus and direct the trial court to set aside its October 12, 2012, order compelling the production of documents included in the privilege log and to order those documents protected from discovery.
PETITION GRANTED; WRIT ISSUED.
*516 STUART, BOLIN, MURDOCK, MAIN, and BRYAN, JJ., concur.
PARKER, J., concurs in the result.
MOORE, C.J., dissents.

. There are four other lawsuits arising from the mercaptan release. However, this mandamus petition does not involve those other cases.

. The subsections of Rule 26(b), Ala. R. Civ. P., were renumbered as a result of amendments effective February 1, 2010. What were subsections (b)(3), (b)(4), and (b)(5) are now subsections (b)(4), (b)(5), and (b)(6). See Soutullo v. Mobile Cnty., 58 So.3d 733, 739 (Ala.2010).

“2A similar provision is contained in Ala. R. Civ. P. 45(d)(2), which deals with discovery from nonparties. That section provides:
“ ‘When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim *508 shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.’ ”

. "We note that federal decisions construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure because the Alabama Rules were patterned after the Federal Rules. Borders v. City of Huntsville, 875 So.2d 1168 (Ala.2003).” Ex parte Novus Utils., Inc., 85 So.3d 988, 996 (Ala.2011).

. Rule 35(b), Ala. R. Civ. P., provides for obtaining discovery of a report from a physical or mental examination of a person that is conducted pursuant to Rule 35(a), Ala. R. Civ. P.; thus, it does not apply to this case.